———o———

THE PEOPLE v. JOHN NEUMANN.

*Criminal law—Intoxicating liquors—Furnishing to minor—Directing verdict.*

1. A saloon-keeper who allows an adult person to treat a minor to beer in his saloon, and the minor to drink it there, without any protest or demur whatever, is guilty of a violation of the provision of Act No. 313, Laws of 1887, which makes it unlawful for any person to sell, furnish, or give any spirituous, malt, brewed, fermented, or vinuous liquors to any minor.

2. Whenever there is no question of *intent* in a criminal case, and no inferences about which reasonable men might differ, and when, upon the *admitted facts*, the only question to be determined is whether under the law the statute has been violated, the trial judge may, with perfect propriety, state to the jury that the law applied to such undisputed facts shows the defendant to be guilty of the offense charged, and that it is their duty so to find under the facts and law.

3. It is not intended to encourage the practice of directing a verdict against the accused in criminal cases. In all such cases

the jury should be permitted to retire to the jury-room, and there deliberate, and the trial judge should content himself by stating the law as applied to the facts, and with an admonition to the jury of their plain duty in the premises.

4. The following general propositions are summarized from the opinion of Mr. Justice MORSE:

a—The liquor law of 1887 punishes any person who furnishes liquor to a minor, and the *furnishing* of liquor is *letting the minor have liquor*, and is something more than *giving* it to him.

b—It is not necessary that a person should *hand* the liquor to the minor in order to *furnish* it to him.

c—If liquor, belonging to a person and under his control, is, by his consent or connivance, permitted to be taken and drank by a minor, whether passed to him direct or through the hands of another, the liquor is *furnished* to such minor, within the meaning of the statute cited.

Exceptions before judgment from Mason. (Judkins, J.) Submitted on briefs February 4, 1891. Decided February 27, 1891.

Information for selling liquor to a minor. Conviction affirmed. The facts are stated in the opinion.

*J. B. McMahon*, for respondent.

*A. A. Ellis*, Attorney General, and *Gilbert H. Blodgett*, Prosecuting Attorney, for the people.

MORSE, J. This is a prosecution under Act No. 313, Laws of 1887, for selling liquor to a minor, and the defendant was convicted in the circuit court for the county of Mason. Neumann was a saloon-keeper in the city of Ludington. August 9, 1890, Fred Brown, of the age of 17 years and upwards, being 18 in October of that year, went into respondent's saloon in company with two adults, Jefferson and Lozo. He testifies that they went in and got some beer; that Lozo gave him 20 cents, and told him to get two bottles of beer; that he (Brown) ordered the beer of Neumann, who was out of doors

sweeping.   He came in and got the beer and some glasses, which were placed upon a table, at which Brown, Jefferson, and Lozo sat down and drank.     Brown paid for the beer.

Jefferson testified that he did not know who ordered the beer, or who paid for it, but that Lozo said, "Come in and have a drink," before they went in.   His attention being called to his testimony on the examination in justice's court, the court, against the objection of respondent's counsel, permitted such evidence to be read to him in the presence of the jury, as follows:

"I heard the order for beer given.   I did not give it. I don't know who did give it.   I saw the beer paid for. Mr. Fred Brown paid for it while sitting at the table. He gave the money to John Neumann,—20 cents;" and to ask him, "Do you remember testifying to that?" to which he answered, "No."

Lozo   testified   that   he   ordered   the   beer,   but   did not—

"Know exactly who paid for it.   I pulled out 20 cents, and laid it on the corner of the table, and I said, 'Here, John, is the money for the beer.'     *     *     *     I did not give Brown the ten cents outside of the saloon.   I don't know whether I gave him any money or not."

Neumann, on his own behalf, testified that Lozo ordered the beer, and that he took the money out of his pocket to pay for it, but, being busy, he did not step over to get his pay at once, and when he did get around there Brown handed him the money.   He had known Brown since 1885.

The circuit judge instructed the jury, in substance, that it was not necessary to constitute the offense charged that a saloon-keeper should sell or hand the liquor directly to a minor; that if he sells liquor to a party, and such party turns it over to some one else, who is a minor, and they drink in the saloon, it is a violation of the statute;

that "the policy of the law is to discourage sales to minors, and so, I think, the mere fact that this man Lozo might have bought the liquor and paid for it, as he claims, would not be very important, as long as the rest of them drank it at the same place;" that the proofs showed that the boy (Brown) was about 17 years old, and that he was a young-looking boy, and nobody could be deceived by his appearance; that Neumann did not claim that he was so deceived, or that he supposed he was over age; and that the evidence, as it stood, made a case against the respondent; and he thereupon directed a verdict of guilty.

It is claimed that if Lozo ordered the beer, and paid for it, the respondent cannot be made responsible under the statute for selling, giving, or furnishing liquor to Brown; and that, at the least, the question should have been submitted to the jury, and, if they found that respondent sold the liquor to Lozo in good faith, not intending to furnish it to Brown, he should have been acquitted. We are referred in support of this contention to the case of *Siegel v. People,* 106 Ill. 89. In that case the minor went into a saloon with two others, one of them (Roach) being over age. Roach called for the beer, and the three went up twice to the bar, and drank standing. The others gave Roach the money each time, and he paid for the drinks. The beer was dealt out in glasses by the bar-keeper of the defendant. It was held that this was not "selling or giving" liquor to a minor under the statute, and that it was not of controlling consequence whether the bar-keeper saw the minor, and understood he was to participate in the drinking of the liquor, or not. "It is true, in such case he would be *letting* a minor have liquor, and if that were prohibited he would be amenable therefor. But he would neither be *selling*

nor *giving* to a minor,—he would simply be selling to an adult."

I am not satisfied with the reasoning of this case, and should hesitate long before adopting the principle of it; but our statute goes further than the Illinois law, and punishes the "furnishing" of liquor to a minor, and the furnishing of liquor is "letting a minor have liquor," and is something more than giving. A narrow and technical definition of the word "giving" might restrict its meaning to the handing of the liquor to him direct by the person giving it, as seems to be held by the supreme court of Illinois; but it is not necessary that a person should hand the liquor to a minor in order to furnish it. If the liquor, belonging to the person and under his control, is, by his consent or connivance, permitted to be taken and drank by the minor, whether it is passed to him direct or through the hands of another is immaterial; the liquor in either case is *furnished* to such minor, within the meaning of our statute.

In the case at bar, the respondent knew that Brown was a minor, and that he was sitting at the table with Lozo, who ordered the bottles of beer, and he took glasses enough with the bottles to the table to furnish accommodations for all three, Brown included, to drink of the beer. He received the money from Brown, claiming in his testimony that Lozo laid the change upon the table, and Brown picked it up and handed it to him. He made no attempt to prevent Brown from drinking, but, on the contrary, connived at and aided him in so doing. This is his own testimony. He says, however, that he did not know that Brown was at the table *drinking* when he first went there. It is as plain as can be that the respondent, to make the best of the case in his favor, allowed Lozo to treat a minor to beer in his saloon,

and the minor to drink it there, without any protest or demur whatever. It must be presumed that he had control over his own place of business. If Lozo had taken the bottle of beer out of doors, or away from the premises of respondent, and there treated the minor, the case would have been different; or had respondent forbidden the giving of the beer to Brown in his saloon, or said to Brown, " You can be furnished with no beer upon my premises," and did all that a prudent man could to prevent the drinking of the beer by the minor, and sold it to Lozo with no intent that it should thereby be furnished or given to the minor, he would not have been guilty of any violation of the law, although Brown might have drank it after Lozo purchased it. But as the case stands, upon respondent's own showing, he has violated the statute. To hold otherwise would be against the reason of the statute, and nullify it. As in the Illinois case, a minor could go in, sit down at a table, or stand up before a bar, and drink as many times as he pleased, or others were pleased to have him, if only some adult bought and paid for it. The statute of our State cannot be evaded in this way.

It is also alleged as error that the court said:

"I think the evidence, as it stands, makes a case against the respondent beyond a doubt, and I so charge you, gentlemen of the jury, to find him guilty."

The court was undoubtedly right, as a matter of law, in this direction; but it is claimed that the jury in criminal cases are the judges of the law as well as of the facts. This is true, in the sense that the jury might in this case, as well as in any criminal case, have found a verdict of not guilty in spite of the direction of the court, and, having thus acquitted the prisoner, the court would have been powerless, not only to enter a different verdict, but to grant a new trial, as, once acquitted, he·

could not have been put in jeopardy again. But the judge having directed the jury that, under the undisputed facts, the statute had been violated, and the accused must be found guilty, and the jury having followed such direction, we are not called upon to grant a new trial, when we are satisfied that such direction and the verdict were in accordance with the law as applied to the respondent's own testimony, which was the most favorable of any in his behalf.[1] Verdicts have been upheld in similar cases in the following decisions of this Court: *People v. Richmond,* 59 Mich. 570; *People v. Kirsch,* 67 Id. 539; *People v. Lyng,* 74 Id. 579; *People v. Ackerman,* 80 Id. 588.

Whenever there is no question of intent in a criminal case, and no inferences, about which reasonable men might differ, to be drawn from the facts, and where, upon the admitted facts, the only question to be determined is whether under the law the statute has been violated, the trial judge may, with perfect propriety, state to the jury that the law applied to the facts, which are undisputed, shows the defendant to be guilty of the offense charged, and that it is their duty so to find under the facts and the law. But it has been repeatedly held that he cannot in so many words direct them that they must bring in a verdict of guilty; and that they are at liberty to find otherwise, if they see fit, under the federal Constitution, which guarantees to every accused person—

"The right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed."

And verdicts have often been set aside when directed by courts in opposition to this right. See *U. S. v.*

---

[1] See *People v. Collison, post,* 105, where the circuit judge directed the clerk to enter a verdict of guilty, which is held erroneous.

*Taylor*, 11 Fed. Rep. 470, and cases there cited.    But in this State, where a judge has directed a verdict of guilty, and the jury have followed such direction, and the facts are admitted or undisputed, and the only question is one of law, applied to such facts, a new trial will not be granted, if the judge was right in his application of the law.    No injustice can be done the accused in such case, as it is not to be presumed that a jury will find in opposition to the law from mere whim, caprice, or prejudice, although they may have the right to do so.

In this ruling we do not intend to encourage the practice of directing a verdict against the accused in criminal cases.    In all such cases the jury should be permitted to retire to the jury-room, and there deliberate, and the trial judge should content himself by stating the law as applied to the facts, and with an admonition to the jury of their plain duty in the premises.

The conviction in this case is affirmed.

The other Justices concurred.